**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**


CHARLES S.,                        :
   Plaintiff,                      :
                                   :
v.                                 :          Civil No. 3:22CV27(AWT)
                                   :
KILOLO KIJAKAZI, ACTING            :
COMMISSIONER OF SOCIAL SECURITY,   :
   Defendant.                      :


## RULING AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Charles S. appeals the Commissioner's final
decision denying his application for Supplemental Security
Income ("SSI") and Disability Insurance Benefits ("DIB")
pursuant to section 205(g) of the Social Security Act, 42 U.S.C.
§§ 405(g) and 1383(c)(3).[1]

---

[1] The alleged onset date for the DIB and SSI claims is December 4, 2017. See
R. 243 (SSI application), 252 (DIB application). The Administrative Law Judge
issued the Decision on April 22, 2021. See R. 28. For the DIB claim, it is
undisputed that the plaintiff is insured through December 31, 2021. See R.
15. Therefore, the relevant period is December 4, 2017, through April 22,
2021.

The plaintiff filed a motion for reversal or remand, challenging the basis for the formulation of his residual functional capacity ("RFC"): Specifically, the plaintiff contends that the Administrative Law Judge ("ALJ") "1) mis-evaluated the medical opinion evidence of record[2] . . .; 2) had no medical opinions to rely on for the psychological portion of Mr. S[.]' claim; and 3) left out supported factors from his RFC description." Pl.'s Mem. (ECF No. 14-1) at 2.

The Commissioner filed a motion for an order affirming the Commissioner's decision, maintaining that "the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards". Def.'s Mem. (ECF No. 17-1) at 17.

For the reasons set forth below, the court concludes that the ALJ applied the correct legal principles and that the ALJ's findings are supported by substantial evidence. Thus, the Commissioner's final decision is being affirmed.

## I.   **Legal Standard**

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844

---

[2] The plaintiff challenges the ALJ's evaluation of the opinions of three doctors: State Agency reviewers Drs. Carol R. Honeychurch (initial review of claims), S. Green (reconsideration of claims), and treating physiatrist Silvia Knoploch (two-page physical assessment form).

(2d Cir. 1981).  The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).  Substantial evidence "is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted).

Absent legal error, the court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Thus, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

## II.  **Discussion**

The Decision states:

> The claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except that he can occasionally climb ramps and
> stairs, balance, stoop, kneel, crouch and crawl. He can
> never climb ladders, ropes or scaffolds. He must avoid
> concentrated exposure to extreme heat, fumes, odors, dust,
> gases, poor ventilation and hazards (including unprotected
> heights and dangerous moving machinery).

R. 20. Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects weighing
> up to 10 pounds. Even though the weight lifted may be very
> little, a job is in this category when it requires a good
> deal of walking or standing, or when it involves sitting
> most of the time with some pushing and pulling of arm or
> leg controls. To be considered capable of performing a full
> or wide range of light work, you must have the ability to
> do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b). In addition:

> [T]he full range of light work requires standing or
> walking, off and on, for a total of approximately 6 hours
> of an 8-hour workday.

Social Security Ruling 83-10.

The regulations define "residual functional capacity" as
"the most you can still do despite your limitations." 20 C.F.R.
§§ 404.1545(a)(1), 416.945(a)(1). The ALJ "will assess []
residual functional capacity based on all the relevant evidence
in [the] case record." Id. When assessing the RFC, the ALJ "will
consider [the plaintiff's] ability to meet the physical, mental,

sensory, and other requirements of work, as described in paragraphs (b), (c), and (d)". 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). Paragraphs (b), (c), and (d) state:

(b) Physical abilities. When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

(c) Mental abilities. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

(d) Other abilities affected by impairment(s). Some medically determinable impairment(s), . . . which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. §§ 404.1545(b), (c), (d) and 416.945(b), (c), (d).

Here, the plaintiff challenges the ALJ's determination of his ability to sit, stand, walk and push and pull arm or leg controls. Although relevant due to his asthma and obesity, the plaintiff does not challenge the environmental conditions. The

plaintiff does not challenge the weight limitations or the
climbing and postural limitations.

### A.   Weighing of the Medical Opinions

Dr. Carol R. Honeychurch found that the plaintiff could
perform light work with environmental limitations. Dr. S. Green
found the plaintiff capable of sedentary work without
environmental limitation. Dr. Silvia Knoploch found the
plaintiff capable of less than sedentary work, and her two-page
physical assessment, a check-the-box and fill-in-the blank form,
did not prompt for, nor provide, environmental limitations.

The plaintiff contends that the ALJ "mis-evaluated the
medical opinion evidence of [State Agency reviewers Drs.
Honeychurch (initial reviews) and Green (reconsiderations), and
treating physiatrist Silvia Knoploch], relying on the least
supported, but least restrictive opinion [of Dr. Honeychurch]".
Pl.'s Mem. at 2.

The defendant contends that the plaintiff relies "on
caselaw applying the former medical opinion regulations at 20
C.F.R. §§ 404.1527 and 416.927"; that "the ALJ provided a very
thorough explanation of how supportability and consistency were
considered in evaluating the medical opinion of Dr. Knoploch and
the prior administrative medical findings of Dr. Honeychurch and
Dr. Green (Tr. 24-26)"; and that the "Plaintiff fails to

identify any error in the ALJ's analysis under 20 C.F.R. §§
404.1520c, 416.920c." Def.'s Mem. at 3-4.

    Sections 404.1520c and 416.920c of the regulations address
how an ALJ considers, and articulates the consideration of,
medical opinions and prior administrative medical findings for
claims filed on or after March 27, 2017.  These claims were
initially filed on October 14, 2019.  See R. 250 (SSI), 256
(DIB).  The regulations state in pertinent part:

> (a) How we consider medical opinions and prior
> administrative medical findings. **We will not defer or give
> any specific evidentiary weight, including controlling
> weight, to any medical opinion(s) or prior administrative
> medical finding(s), including those from your medical
> sources.** When a medical source provides one or more medical
> opinions or prior administrative medical findings, we will
> consider those medical opinions or prior administrative
> medical findings from that medical source together using
> the factors listed in paragraphs (c)(1) through (c)(5) of
> this section, as appropriate. The most important factors we
> consider when we evaluate the persuasiveness of medical
> opinions and prior administrative medical findings are
> supportability (paragraph (c)(1) of this section) and
> consistency (paragraph (c)(2) of this section). We will
> articulate how we considered the medical opinions and prior
> administrative medical findings in your claim according to
> paragraph (b) of this section.
>
> (b) How we articulate our consideration of medical opinions
> and prior administrative medical findings. We will
> articulate in our determination or decision how persuasive
> we find all of the medical opinions and all of the prior
> administrative medical findings in your case record. Our
> articulation requirements are as follows:
>
>> (1) Source-level articulation. . . . [W]hen a medical
>> source provides multiple medical opinion(s) or prior
>> administrative medical finding(s), **we will articulate
>> how we considered the medical opinions or prior
>> administrative medical findings from that medical**

7

**source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.**

(2) Most important factors. The factors of **supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors** we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. . . . **We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section,** as appropriate . . . .

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. . . .

(c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

(1) Supportability. **The more relevant the objective medical evidence and supporting explanations** presented by a medical source are **to support** his or her medical opinion(s) or **prior administrative medical finding(s), the more persuasive** the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. **The more consistent a** medical opinion(s) or **prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources** in the claim, **the more persuasive** the medical opinion(s) or prior administrative medical finding(s) will be.

(3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i)-(v) of this section.

(i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source

has a longitudinal understanding of your
impairment(s).

(ii) Frequency of examinations. The frequency of
your visits with the medical source may help
demonstrate whether the medical source has a
longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship. The
purpose for treatment you received from the
medical source may help demonstrate the level of
knowledge the medical source has of your
impairment(s).

(iv) Extent of the treatment relationship. The
kinds and extent of examinations and testing the
medical source has performed or ordered from
specialists or independent laboratories may help
demonstrate the level of knowledge the medical
source has of your impairment(s).

(v) Examining relationship. A medical source may
have a better understanding of your impairment(s)
if he or she examines you than if the medical
source only reviews evidence in your folder.

(4) Specialization. The medical opinion or prior
administrative medical finding of a medical source who
has received advanced education and training to become
a specialist may be more persuasive about medical
issues related to his or her area of specialty than
the medical opinion or prior administrative medical
finding of a medical source who is not a specialist in
the relevant area of specialty.

(5) Other factors. **We will consider other factors that
tend to support or contradict** a medical opinion or
**prior administrative medical finding. This includes,**
but is not limited to, evidence showing a medical
source has **familiarity with the other evidence in the
claim or an understanding of our disability program's
policies and evidentiary requirements.** When we
consider a medical source's familiarity with the other
evidence in a claim, **we will also consider whether new
evidence we receive after the** medical source made his
or her medical opinion or **prior administrative medical
finding makes the** medical opinion or prior
**administrative medical finding more or less
persuasive.**

9

(d) Evidence from nonmedical sources. We are not required
to articulate how we considered evidence from nonmedical
sources using the requirements in paragraphs (a)-(c) in
this section.

20 C.F.R. §§ 404.1520c, 416.920c (emphasis added).

### 1. State Agency Reviewers Drs. Honeychurch and Green

The plaintiff contends that "Dr. Honeychurch's opinion is

entitled to the least weight." Pl.'s Mem. at 8. The plaintiff

states that

> Dr. Honeychurch and Dr. Green largely agreed, except Dr.
> Green, relying on slightly updated records, quite correctly
> concluded that Mr. S[.] is unable to stand and walk 6 hours
> during a work day. The only real difference between these
> two opinions is that Dr. Green's opinion is a bit more
> restrictive, but this restriction is in-line with the
> longitudinal record, including the records of Dr. Knoploch
> and her colleague, Dr. Claudio Petrillo, who performed all
> of Mr. S[.]' knee injections.

Pl.'s Mem. at 10. The plaintiff contends that

> the ALJ cited to multiple exhibits generally (19F, 23-28F
> (Tr. 24)) to justify the reduced weight assignment for Dr.
> Knoploch and Dr. Green, but there is nothing in those
> exhibits that support[]s the ALJ's conclusions, and there
> is nothing that contradicts Dr. Knoploch's expert opinion.

Pl.'s Mem. at 11.

The defendant contends that the plaintiff relies "on

caselaw applying the former medical opinion regulations at 20

C.F.R. §§ 404.1527 and 416.927" and that "the ALJ properly

considered the prior administrative medical findings of Dr.

Honeychurch and Dr. Green" pursuant to 20 C.F.R. §§ 404.1520c,

416.920c. Def.'s Mem. at 3-4.

The Decision states:

In June 2020, **state agency consultant Carol Honeychurch, M.D., opined** that the claimant could . . . **sit, stand and/or walk for about six hours in an eight-hour workday. . . . . He needed to avoid concentrated exposure to extreme heat, fumes, odors, dust, fumes, gases, poor ventilation and hazards** (Exs. 1A [R. 78-91], 2A [R. 92-105]/8-12 [R. 99-103]).

In October 2020, **state agency consultant, Dr. Green** indicated that the claimant could . . . **stand and/or walk for four hours . . . and sit for about six hours in an eight-hour workday** . . . . (Exs. 6A [R. 109-115]; 8A [R. 117-123]).

The undersigned finds **the overall opinion of Dr. Honeychurch persuasive.** Dr. Honeychurch supported her opinion with **detailed explanations of the relevant clinical evidence that was available to her at the initial determination level.** Dr. Honeychurch **cited to the claimant's imaging scans, obesity, and history of undergoing left knee and spinal injections and left shoulder surgery in support of her findings.** The claimant did submit **additional evidence** at the hearing level, but that evidence **does not contradict the findings** of the state agency medical consultant. Specifically, **treatment notes document the effectiveness of the claimant's treatments, his independent gait, lack of standing and walking limitations and recommendations for a moderate exercise regimen** (Exs. 19F [R. 2307-2309]; 22F [R. 2421-2436]; 23F-28F [R. 2439-2608]).

**Dr. Honeychurch's opinion regarding** the claimant's **standing, walking and environmental limitations is more persuasive than Dr. Green's** opinion. **Dr. Green's opinion is minimally persuasive.** While Dr. Green had the benefit of more evidence to review at the reconsideration determination level when compared to Dr. Honeychurch, **his findings that the claimant could stand and/or walk for four hours** in an eight-hour workday **with no environmental work-related limitations is inconsistent with the other evidence of record.** Dr. Green, like Dr. Honeychurch, relied on the claimant's history of spondylosis, left rotator cuff syndrome and left knee osteoarthritis/internal derangement in support of his findings. Yet, **Dr. Green did not fully consider how the claimant's history of asthma and morbid**

**obesity would affect his ability to be exposed to certain environmental conditions.** The claimant's **normal and independent gait, lack of standing/walking limitations at his Medi-Weight Loss visits, moderate exercise recommendations and ability to fish three to four days per week during fishing season, and bring his children to the park two to three days per week fail to support that he could only walk and/or stand for four hours** in an eight-hour workday (Exs. 4E [R. 310-317]; 19F [R. 2307-2309]; 23F-28F [R. 2439-2608][;] Hearing Testimony [35-77]).

The claimant presented with decreased and painful ranges of spinal, left shoulder and left knee motion at examinations (Exs. 12F/1-3, 6, 9, 22, 24; 15F/4-6, 24, 28, 42; 19F; 20F/6, 13, 19, 26, 29; 22F/2-3; 26F/6, 14, 27). Yet, **the claimant's improved musculoskeletal symptoms with treatment, normal lower extremity strength at numerous examinations, intact sensations, normal coordination, independent gait, lack of running/walking/standing limitations at weight loss appointments, and moderate exercise recommendations support that he possesses the physical ability and stamina to . . . sit for two hours . . . and stand and/or walk for six hours in an eight-hour workday despite his obesity, degenerative joint disease and degenerative disc disease** (Exs. 7F/8, 17; 9F/4; 10F/6; 11F/64; 12F/2, 5-6, 9, 22; 14F/16; 15F/2, 5-6, 24, 28, 42; 17F/10, 35; 19F; 20F; 21F/6; 22F/2-3; 24F/2, 6, 10, 14; 26F/2, 5-6, 14, 27, 38, 77). . . .

The record documents that the claimant has a **history of asthma** that was treated conservatively (Exs. 8F; 9F/10, 16; 17F/35, 53). The record **also** documents the claimant's **morbid obesity** (Exs. 7F/8, 17; 9F/4; 10F/6; 11F/64; 12F/2, 6; 17F/10, 35; 21F/6). However, the claimant's normal respiratory examinations, lack of running/walking/standing limitations at weight loss evaluations and his ability to drive a motor vehicle, fish seasonally and engage in moderate exercise **support that he must avoid concentrated exposure to extreme heat, fumes, odors, dust, gases, poor ventilation and hazards (including unprotected heights and dangerous moving machinery) for safety reasons** (Exs. 17F/19, 35; 24F/2, 6, 10, 14; 26F/2, 5-6, 14, 27, 38, 77; Hearing Testimony).

R. 24-25 (emphasis added).

Here, the ALJ clearly articulated specific and reviewable reasons for finding Dr. Honeychurch's opinion persuasive: Dr. Honeychurch supports her opinion with relevant, objective medical evidence (imaging scans, obesity, and [the] history of undergoing left knee and spinal injections and left shoulder surgery; <u>see</u> her medical opinions at R. 83-89/1A (DI (SSI) claim), 97-103/2A (DIB claim)), and provides detailed explanations of the relevant clinical evidence that was available to her at the initial determination level. <u>See</u> <u>id.</u> The ALJ acknowledged that the plaintiff submitted additional evidence at the hearing level and noted that that evidence was consistent with Dr. Honeychurch's findings (effectiveness of the claimant's treatments, independent gait, lack of standing and walking limitations and recommendations for a moderate exercise regimen).

Also, the ALJ clearly articulated specific, reviewable reasons for finding Dr. Green's opinion minimally persuasive: Dr. Green did not fully consider how the claimant's history of asthma and morbid obesity would affect his ability to be exposed to certain environmental conditions. Dr. Green had the benefit of more evidence to review at the reconsideration level when compared to Dr. Honeychurch, but substantial evidence supports the ALJ's findings that Dr. Honeychurch's standing and walking limitations were more consistent with other medical and

nonmedical evidence than Dr. Green's more restrictive ones: the claimant's normal and independent gait, intact sensation, normal coordination;[3] lack of walking limitations;[4] moderate exercise recommendations;[5] improved musculoskeletal symptoms with

---

[3] The records state "Gate/Stance = Normal on level surfaces without a device, ok left unipedal stance"; "Sensory: Intact"; "Coordination: Intact" (emphasis in original). 1/3/18 R. 2375 20F/65, 2/5/18 R. 2369 20F/59, 3/5/18 R. 2366 20F/56, 4/3/18 R. 2363 20F/53, 6/5/18 R. 2360 20F/50, 8/7/18 R. 2357 20F/47, 10/9/18 R. 2354 20F/44, 12/10/18 R. 2351 20F/41, 2/6/19 R. 2348 20F/38, 4/10/19 R. 2345 20F/35, 6/11/19 R. 2342 20F/32, 8/8/19 R. 2339 20F/29, 10/9/19 R. 2336 20F/26, 12/4/19 R. 2332 20F/22, 2/5/20 R. 2329 20F/19, 4/6/20 R. 2323 20F/13, 6/1/20 R. 2320 20F/10, 8/4/20 R. 2314 20F/4, 9/28/20 R. 2433 22F/14, 11/25/20 R. 2429 22F/10, 2/3/21 R. 2422 22F/3.

[4] The records state "Limits on Running/Walking: No". 8/28/19 R. 2517 26F/34, 9/14/19 R. 2521 26F/38, 9/21/19 R. 2439 23F/2, 9/28/19 R. 2443 23F/6, 10/5/19 R. 2447 23F/10, 10/12/19 R. 2451 23F/14, 10/19/19 R. 2457 24F/2, 10/26/19 R. 2461 24F/6, 12/14/19 R. 2465 24F/10, 12/21/19 R. 2469 24F/14, 12/28/19 R. 2475 25F/2, 1/4/20 R. 2484 26F/6, 1/11/20 R. 2485 26F/2, 1/25/20 R. 2493 26F/10, 2/12/20 R. 2501 26F/18, 2/19/20 R. 2497 26F/14, 2/26/20 R. 2506 26F/23, 3/4/20 R. 2510 26F/27. The ALJ stated that the plaintiff reported no standing limitations (R. 23, 26). The weight loss clinic records do not address standing. However, as noted by the defendant, absence of running or walking limits reasonably imply the same for standing.

[5] The records state "[c]ardio and resistance training 20-30 min 3-4x week" and "[c]ontinue minimum 10000 steps daily". 9/14/19 R. 2524 26F/41, 9/21/19 R. 2442 23F/5, 9/28/19 R. 2446 23F/9, 10/5/19 R. 2450 23F/13, 10/12/19 R. 2454 23F/17, 10/19/19 R. 2460 24F/5, 10/26/19 R. 2464 24F/9, 12/14/19 R. 2468 24F/13, 12/21/19 R. 2472 24F/17, 12/28/19 R. 2560 26F/77 and R. 2478 25F/5, 1/4/20 R. 2492 26F/9, 1/11/20 R. 2488 26F/5, 2/12/20 R. 2504 26F/21 and R. 2582 27F/17, 2/19/20 R. 2500 26F/17 and R. 2589 28F/5, 2/26/20 R. 2509 26F/26, 3/4/20 R. 2513 26F/30; also "Advised to minimum 10000 steps daily, monitored with pedometer. . . . Daily fast walks minimum 20 minutes." 8/28/19 R. 2519 26F/36, 1/25/20 R. 2495 26F/12.

treatment;[6] normal lower extremity strength at examinations;[7]

ability to fish three to four days per week during fishing

---

[6] The records state "MVA on 9/9/17 with worse neck pain from pre-injury. Improving". 1/3/18 R. 2375 20F/65, 2/5/18 R. 2369 20F/59, 3/5/18 R. 2366 20F/56, 4/3/18 R. 2363 20F/53, 6/5/18 R. 2360 20F/50, 8/7/18 R. 2357 20F/47, 10/9/18 R. 2354 20F/44, 12/10/18 R. 2351 20F/41, 2/6/19 R. 2348 20F/38. See also 2/5/18 R. 2368 20F/58 ("S/P left cervical medial branch blocks on 2/12/16 with partial relief of LUE dysesthesias until recurrence post 9/9/17 MVA, partial improvement since. . . . Status post subacromial cortisone injection on 1/8/18 with Dr. Petrillo with significant relief since."); 3/5/18 R. 2365 20F/55 ("LT shoulder (resolved since 1/8/18 injection with Dr. Petrillo)"); 5/9/19 R. 1172-73 12F/5-6 (Orthopedic doctor Daniel Weiland noted "His mechanical symptoms have improved. . . . His ligaments are stable. He is grossly neurovascularly intact."); 8/8/19 R. 2338 20F/28 ("The left knee is much better since injury with question of meniscus tear after HA injections and course of PT; pain is mild and mainly felt when going up the stairs."); 2/11/20 R. 2326 20F/16  ("The patient responded to a series of 3 injections of HA supplementation 9 months ago . . . Strongly recommend repeat HA supplementation at this time with US guidance."), 6/9/20 R. 2317 20F/7 (same), 12/7/20 R. 2427 22F/8 (same); 8/4/20 R. 2313 20F/3 ("S/p prolotherapy on 2/11/20 and 6/9/20 (decreased pain but 2nd injection not done 1 month later as planned and pain is back"); 9/28/20 R. 2432 22F/13 ("L>R low back (85 % decrease in pain post repeat facet blocks on 9/16/20; able to walk longer distances) . . . LT shoulder (resolved since 1/8/18 injection with Dr. Petrillo except for residual limitations in prolonged abduction/flexion). . . . decreasing left knee pain post injury with question of meniscus tear; s/p HA injections and course of PT. . . . S/p prolotherapy x 4 to date, last one on 9/21/20 (70% better overall and feels knee is stronger)."); 11/25/20 R. 2428 22F/9 ("L>R low back (85 % decrease in pain post repeat facet blocks on 9/16/20 until recently, starting to wear off) . . . "LT shoulder (resolved since 1/8/18 injection with Dr. Petrillo except for residual limitations in prolonged abduction/flexion). . . . decreasing left knee pain post injury with question of meniscus tear; s/p HA injections and course of PT. . . . S/p prolotherapy x 5 to date, last one on 10/26/20 (70% better overall and feels knee is stronger).")(Emphasis in original.); 12/7/20 2426 22F/7 (Dr. Petrillo noted "Patient reports continued improvements with prolotherapy injections to the left knee with progressive decrease in pain."); 2/3/21 R. 2421 22F/2 ("low back (75 % decrease in pain post repeat facet blocks on 9/16/20 . . .) . . . LT shoulder (resolved since 1/8/18 injection with Dr. Petrillo except for residual limitations in prolonged abduction/flexion) . . . decreasing left knee pain post injury with question of meniscus tear; s/p HA injections and course of PT. . . . S/p prolotherapy x 6 to date, last one on 12/7/20 and will have repeat inj. today (90% better overall and feels knee is stronger; main c/o is mild pain when negotiating stairs)."(Emphasis in original.))

[7] Joseph Rosa, M.D. on 6/12/18 found "Motor strength normal throughout." R. 1280 14F/16. Orthopedic doctors Troy Glasser, D.O. on 4/26/19 (R. 1169 12F/2) and Bryan Sage, M.D. on 5/27/19 (R. 1176 12F/9) found "5 out of 5 with extension and flexion". Fatbardha Kodzodziku found "Strength: good upper and lower body extremities 5/5" and "Muscle Weakness: No". 8/28/19 R. 2517 26F/34, 9/14/19 R. 2521 26F/38, 9/21/19 R. 2439 23F/2, 9/28/19 R. 2443 23F/6, 10/5/19 R. 2447 23F/10, 10/12/19 R. 2451 23F/14, 10/19/19 R. 2457 24F/2,

season, and bring his children to the park two to three days per week (see R. 314 4E/5).  Additionally, it is reasonable to assume that both Dr. Honeychurch and Dr. Green had familiarity and understanding of the disability program's policies and evidentiary requirements.

The court finds no error in the ALJ's application of 20 C.F.R. §§ 404.1520c or 416.920c to the opinions of Drs. Honeychurch and Green.  Substantial evidence supports the ALJ's findings.

### 2. Treating Physiatrist Silvia Knoploch

The plaintiff contends that "Dr. Knoploch's opinion is entitled to the greatest weight . . . ." Pl.'s Mem. at 8. In support, the plaintiff states that

> Many of the records that the ALJ relied on to . . .
> minimize Dr. Knoploch's opinion come from Medi-fast . . .
> and [are] . . . recommendations . . . (Tr. 2582, 2589). .
> . . [that] do not reflect . . . actually ab[ility] . . . .
> A notation regarding Mr. S[.]' exercise level notes it to
> be "mild." (Tr. 2599). Even if he were able to perform this
> exercise, 20-30 minutes of daily movement is far less
> physically demanding than light exertion work, which
> requires 6 hours a day of standing, walking, and lifting.

> Dr. Knoploch's treatment notes also reflect that Mr. S[.]
> has been instructed, and attempts to, walk 30 minutes per

10/26/19 R. 2461 24F/6, 12/14/19 R. 2465 24F/10, 12/21/19 R. 2469 24F/14, 12/28/19 R. 2475 25F/2, 1/4/20 R. 2489 26F/6, 1/11/20 R. 2485 26F/2, 2/12/20 R. 2501 26F/18, 2/19/20 R. 2497 26F/14, 2/26/20 R. 2506 26F/23, 3/4/20 R. 2510 26F/27. See also Social Security Ruling 16-3p ("[A]n individual with reduced muscle strength testing who indicates that for the last year pain has limited his or her standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result." )

day but has spasms on and off, during and post-exercise
(Tr. 1396[8]). Notably, before his February 2017 accident,
he was walking 45 minutes per day for exercise, but became
unable to do so (Tr. 1668[9]). Repeatedly, it was noted that
his pain interferes with activities like lifting, bending,
and prolonged still activities (Tr. 1375, 1377, 1378, 1390,
1391, 1396, 1399, 1402, 1405, 1408). He feels worse after
prolonged walking (Tr. 1368).

Some modalities of treatment have in fact been effective
for some of his impairments, but he has so many overlapping
physical impairments, that he is chronically limited, even
when one problem is controlled. For example, in February
2018, Mr. S[.] had 70% improvement to the left side of his
neck but he had remaining pain described as pinching in the
left shoulder and worse with certain movements (Tr.
1408)[10]. Additionally, some of his treatments that have
been effective for pain in the short term, but caused
unwanted harmful side-effects. The steroid injections he

___

[8] The record states "Has been walking up to 30 minutes weather permitting but
*recently* with spasms on/off during and post-exercise." R. 1396 15F/32
(emphasis added).

[9] This 3/29/17 progress note states "He reports due to a MVA in February, he
has not been able to move as he used to due to back/neck pain, no longer
walking daily 45[ ]mins." R. 1668 17F/229. This visit occurred shortly after
the accident and about eight months before the disability onset date. By
2/5/18, two months after his disability onset date, the plaintiff told Dr.
Knoploch that he "[w]as able to walk for 30-45 minutes daily but not recently
due to cold weather." R. 2368 20F/58. See also 3/5/18 R. 2365 20F/55 ("Has
been walking up to 30 minutes weather permitting."), 4/3/18 R. 2362 20F/52
(same), 6/5/18 R. 2359 20F/49 (same), 8/7/18 R. 2356 20F/46 ("Has been
walking up to 30 minutes weather permitting but recently with spasm on/off
during and post-exercise."), 10/9/18 R. 2353 20F/43 ("Has been walking up to
30 minutes weather permitting"), 12/10/18 R. 2350 20F/40 ("Has been walking
up to 30 minutes weather permitting and has TM at home"), 2/6/19 R. 2347
20F/37 (same), 4/10/19 R. 2344 20F/34 "Has noticed increased LLE radicular
symptoms with long distance walking x 3 weeks; he had not been exercising and
restarted walking outdoors; typically 45-60 minutes, pain starts after 20
minutes."), 5/15/20 2265 18F/13 ("Currently exercising: Yes four times a
week, walks"), 9/28/20 R. 2432 22F/13 ("Has been able to walk for 30 minutes
daily".), 2/3/21 R. 2421 22F/2 (same).

[10] The record states "Pain in the left shoulder described as 'pinching', worse
with certain shoulder movements. Status post subacromial cortisone injection
on 1/8/18 with Dr. Petrillo with significant relief since."). 2/15/18 R. 1408
15F/44 and R. 2368 20F/58. See also 2/5/18 R. 2369 20F/59 ("shoulder: very
mild pain with flexion/abduction and IR at terminal range") and 3/5/18 R.
2365 20F/55 ("neck region (left sided; 98% better since 9/'17 MVA" and "LT
shoulder (resolved since 1/8/18 injection with Dr. Petrillo")).

received for his knee and back has contributed to his poor
glucose control (Tr. 1356, 1493), which in turn
disqualified him from bariatric surgery (Tr. 1371).[11]

Pl.'s Mem. at 9.

The defendant contends that "the ALJ properly considered
the medical opinion of Dr. Knoploch" under 20 C.F.R. §§
404.1520c and 416.920c (Def.'s Mem. at 8) because "despite Dr.
Knoploch's treating relationship with Plaintiff, the two 'most
important factors'—supportability and consistency—detracted from
her opinion". Def.'s Mem. at 10.

The Decision states:

> In February 2020, Dr. Knoploch indicated that the claimant
> could walk less than one block without rest or significant
> pain. He could sit for four hours and stand and/or walk for
> one hour in an eight-hour workday. The claimant needed to
> recline or lie down during an eight-hour workday in excess
> of the typical fifteen minute break in the morning, the 30-
> 60 minute lunch break and the typical fifteen minute break
> in the afternoon. He needed to take unscheduled breaks
> every hour for five to ten minute intervals. . . . . The
> claimant could reach with his right upper extremity 50% of
> the day. He could reach with his left upper extremity less
> than 25% of the workday. The claimant would be absent once
> or twice per month. The claimant's symptoms were severe
> enough to often interfere with the attention and
> concentration required to perform simple work-related tasks
> (Ex. 16F).

---

[11] This record states: "a repeat steroid injection which helped short-term and
raised his A1C which has led to *postponement* of bariatric surgery again."
12/4/19 R. 1371 15F/7 (emphasis added). There were various reasons for
postponement. See 9/28/20 R. 2432 22F/13 ("Gastric sleeve surgery pending,
approved and recently denied by insurance"), R. 48-49 (disagreement between
the clinic's recommendation for bypass surgery and preference for less risky
gastric sleeve surgery which required additional weight loss). Also, Dr.
Knoploch's physical assessment form states "Identify the side effects of any
medications which may impact their capacity for work . . . : None". 2/26/20
R. 1437 16F/2.

Dr. Knoploch's opinion, limiting the claimant to less than
sedentary work with regular absences and off-task
behaviors, is **minimally persuasive.** Dr. Knoploch relied on
her treating relationship with the claimant in support of
her findings. She cited to the claimant's history of
spondylosis, left rotator cuff syndrome and left knee
osteoarthritis/internal derangement in support of her
findings. Yet, Dr. Knoploch's overall opinion is
**inconsistent with her treatment notes**, which document the
effectiveness of various treatment measures, the claimant's
normal and independent gait, and intact sensations (Exs.
15F/4-6; 19F; 20F; 22F/2-3). Dr. Knoploch's opinion is also
**inconsistent with the other evidence of record**, which
documents the claimant's lack of standing/running/walking
limitations and his ability to engage in a moderate
exercise program per recommendations (Exs. 23F; 24F/2, 6,
10, 14; 26F/2, 5-6, 14, 27, 38, 77; 28F).

R. 25-26 (emphasis added).

Here, the ALJ considered how Dr. Knoploch supported her

opinion (relied on her treating relationship and cited to the

claimant's history) and clearly articulated specific, reviewable

reasons for finding Dr. Knoploch's opinion minimally persuasive:

Unlike Dr. Honeychurch's opinion, Dr. Knoploch's two-page check-

the-box and fill-in-the-blank physical assessment form did not

cite to more relevant objective medical evidence, and did not

provide detailed supportive explanations. Dr. Knoploch's opinion

is also "inconsistent with her treatment notes, which document

the effectiveness of various treatment measures, the claimant's

normal and independent gait, and intact sensations" and

"inconsistent with the other evidence of record, which documents

the claimant's lack of standing/running/walking limitations and

his ability to engage in a moderate exercise program per recommendations". R. 26.

The court finds no error in the ALJ's application of 20 C.F.R. §§ 404.1520c or 416.920c to the opinion of Dr. Knoploch. Substantial evidence supports the ALJ's findings. As to effectiveness of various treatment measures, see footnote 6. As to normal and independent gate and intact sensations, see footnote 3. As to lack of standing, running, and walking limitations, see footnote 4. As to ability to engage in a moderate exercise program per recommendations, see footnote 5.

### B.   Anxiety and Panic Attacks

The plaintiff contends that the ALJ "had no medical opinion to rely on for the psychological portion of Mr. S[.]'s claim" (Pl.'s Mem. at 2); that the "ALJ should acquire an opinion regarding Mr. S[.]' mental functioning, in light of his treatment for anxiety and panic" (Pl.'s Mem. at 12) because "there is certainly an element of mental health that impacts both his ability to work, and his ability to receive medical treatment" (Pl.'s Mem. at 11); and that the ALJ "failed to properly evaluate[] and incorporate in his RFC description" the anxiety and panic attacks (Pl.'s Mem. at 13). In support, the plaintiff states that

> Mr. S[.] endorsed generalized anxiety symptoms during an
> April 2017 pre-surgical psychiatric evaluation for

bariatric surgery (Tr. 1664[12]). Then, he developed anxiety
after a motor vehicle accident (Tr. 1659-60[13]). In 2020,
he was noted to suffer from panic attacks since a 2017
accident (Tr. 1369-70[14]).

Pl.'s Mem. at 11.

He has had nervousness and daily panic attacks treated with
Valium (Tr. 1671[15]). . . . He has reactive anxiety and
panic attacks (Tr. 1369[16]). In fact, his panic attacks are

---

[12] The record also states: "reports he had a panic attack after a car accident
in March 2017, has taken Valium PRN prescribed by **PCP** on several occasions to
treat panic attacks . . . ." R. 1664 17F/225 (emphasis in original). The
plaintiff was "cleared for Bariatric Surgery" on May 15, 2020. See R. 2268
18F/16 ("He does not have prior psychiatric care and currently endorses MILD
active psychiatric symptoms." (Emphasis added.))

[13] The May 8, 2017 progress note also states "working with Dr[.] Das and now
on anxiolytic"; at that time, the plaintiff was taking diazepam (Valium) "by
mouth nightly as needed". R. 1660 17F/221. Also, there could have been other
reasons for the anxiety. A 9/5/17 follow-up visit notes a lab order for
vitamin B12 with an expiration date of 3/8/18. R. 701 7F/124. A 1/25/18 visit
summary shows a lab order for vitamin B12 with an expiration date of 7/11/18.
See R. 1111 11F/83. Lab results collected 11/26/18 show that plaintiff's
vitamin B12 value was 389, within the range reported to cause
"neuropsychiatric . . . abnormalities" in "5 to 10% of patients". R. 888
10F/36. "Vitamin B12 deficiency can have distressing neuropsychiatric
symptoms.  It can have an etiological role in clinical presentations like . .
. anxiety . . . ." Prashant Sahu, Harish Thippeswamy & Santosh K.
Chaturvedi, Abstract, Neuropsychiatric Manifestations in Vitamin B12
Deficiency, PubMed, https://pubmed.ncbi.nlm.nih.gov/35337631/
#:~:text=Vitamin%20B12%20deficiency%20can%20have,screening%20of%20at%2Drisk%2
0populations (visited last 3/30/23). See also 12/14/19 R. 2468 24F/13
("advised bi-weekly Vitamin B12, B1 and B6 injections to avoid fatigue and
supplement daily nutritional requirements commonly deficient while on reduced
calorie diet plan. Side effects discussed, patient will look for any abnormal
symptoms and call the clinic with any concerns like being shaky, having
palpitation, jitteriness . . . or their heart racing.").

[14] That February 5, 2020 note also states "Hydoxyzine 50 mg QAM with good
control of anxiety. Sleeps with CPAP mask; about 6-6 ½ hours of solid sleep."
R. 1368 15F/4.

[15] The March 7, 2017 progress note states that the plaintiff "had an MRI of
the head which was normal.[ H]e had a panic attack after the **MRI** and was
prescribed valium." R. 1671 17F/232 (emphasis in original). Diazepam (Valium)
was prescribed to be taken "by mouth nightly as needed . . . ." 3/7/17 R.
1673 17F/234.

[16] That progress note is dated 2/5/20. See R. 1368 15F/5. See also 4/6/17
progress note stating, "Mr. S[.] is at low risk of psychiatric complications
following Bariatric surgery". R. 1667 17F/228 ("He does not have prior

so frequent that he could not have a sleep test (Tr. 704[17]). His panic attacks have also compromised his CPAP use because he has had panic attacks when attempting to put the mask on (Tr. 1638[18]).

Pl.'s Mem. at 13.

The defendant contends that "the ALJ duly evaluated" "the medically determinable impairment of anxiety disorder" "under the four broad 'paragraph B' categories under 20 C.F.R. §§ 404.1520a, 416.920a (Tr. 18-19)" (Def.'s Mem. at 14) and the plaintiff "fails to show that the ALJ erred in applying the criteria of 20 C.F.R. §§ 404.1520c and 416.920c[19] and finding his mental impairment non-severe (Tr. 18-19)." Def.'s Mem. at 16-17.

The ALJ's evaluation of mental impairments is governed by 20 C.F.R. §§ 404.1520a and 416.920a. This evaluation technique helps the ALJ:

---

psychiatric care and currently denies active psychiatric symptoms. . . . Mr. S[.] was informed about possible psychiatric complications following bariatric surgery including **depression**, **anxiety** . . . and was advised to seek psychiatric help if he experiences such symptoms." (Emphasis in original.)); 11/6/19 R. 1464 17F/25 ("We recommended he obtain a Freestyle Libre to see if he would better monitor his BG. However, he has been having trouble with the Libre sensor which has been giving him **anxiety**. . . . Still has approximately 3-4 episodes of hypoglycemia/month to 50s-60s which occur at night and causes him to wake up feeling jittery." (Emphasis in original.))

[17] This progress note is dated October 3, 2017 and states: "was in a MVA on 9/9/17, . . . has been having frequent panic attacks [implying for less than a month], therefore cannot perform the sleep test and be cleared for bariatric surgery" [implying at this time]. R. 704 7F/127.

[18] This progress note is dated November 21, 2017 and states "he was in an accident in September and since then [a two-month period] has panic attack when attempting to put the mask on cpap machine. Only used cpap once". R. 1639 17F/200.

[19] See Medical Opinions Section II.A.1.

> (1) Identify the need for additional evidence to determine impairment severity;
>
> (2) Consider and evaluate functional consequences of the mental disorder(s) relevant to [the plaintiff's] ability to work; and
>
> (3) Organize and present [] findings in a clear, concise, and consistent manner.

20 C.F.R. §§ 404.1520a(a), 416.920a(a). For medically determinable mental impairments, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [] findings in accordance with paragraph (e)". 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

Section (e)(4) states that the ALJ's "decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section" (20 C.F.R. §§ 404.1520a(e)(4), 416.920a(a)(e)(4)), which includes the degree of limitation with respect to the plaintiff's ability to "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself". 20 C.F.R. §§ 404.1520a(c)(3), (4); 416.920a(c)(3), (4). "If there is no more than a minimal limitation to do basic work activities, the degree of limitation

is mild, **unless the evidence indicates otherwise.**" <u>See</u> 20

C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (emphasis added).

Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522, 416.922.

> The Decision states:

> As to the mental impairment, the record documents that the **claimant did not require specialized treatment for his anxiety disorder outside of medication management.** The **claimant, nor his representative, reported disabling mental impairments** (Exs. 1E; 6E; 8E; Hearing Testimony). The claimant **presented with mild psychiatric symptoms** at examinations (Ex. 18F/16). He **demonstrated a normal mood and affect,** behavior, judgment, and thought content at numerous examinations (Exs. 10F; 13F; 17F; 29F). He also **presented as not anxious** at other medical visits (Exs. 11F; 21F; 24F/2, 6, 10, 14; 26F/2). Therefore, the claimant's medically determinable mental impairment of anxiety disorder does not cause more than minimal limitation in his ability to perform basic mental work activities and is therefore, non-severe.

> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

> The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. The claimant presented with intact and

unimpaired memory skills and grossly intact cognition at
mental status examinations (Exs. 17F/178; 18F/16). As such,
he has no limitations in understanding, remembering or
applying information.

The next functional area is interacting with others. In
this area, the claimant has no limitation. The claimant
presented as cooperative and pleasant at examinations with
appropriate mood and affect (Exs. 10F; 13F; 17F; 21F/14;
23F/2, 6, 14; 24F/14; 29F). Therefore, the claimant has no
limitations in interacting with others.

The third functional area is concentrating, persisting or
maintaining pace. In this area, the claimant has no
limitation. The claimant presented with normal attention
and concentration skills and coherent and logical thought
processes at examinations, consistent with someone with no
limitations in concentrating, persisting or maintaining
pace (Exs. 17F/228; 18F/16).

The fourth functional area is adapting or managing oneself.
In this area, the claimant has mild limitation. The
claimant presented with normal judgment at examinations
(Exs. 17F/228, 298; 18F/16). Yet, **in consideration of the
claimant's use of prescription anxiety medication to
control his anxiety symptoms, he has mild limitations in
adapting or managing himself**. Because the claimant's
medically determinable mental impairment causes no more
than "mild" limitation in any of the functional areas <u>and
**the evidence does not otherwise indicate**</u> that there is more
than a minimal limitation in the claimant's ability to do
basic work activities, it is non-severe (20 CFR
404.1520a(d)(1) and 416.920a(d)(1)).

R. 18-19 (emphasis added).

Here, the ALJ clearly articulated specific and reviewable

reasons for finding no mental impairment other than a mild

impairment in the plaintiff's ability to adapt or manage himself

in consideration of his use of prescription anxiety medication:

Neither the plaintiff nor his representative reported disabling

mental impairment; the plaintiff presented with mild psychiatric

symptoms at examinations and no specialized treatment other than
medication was required for his anxiety disorder; he
demonstrated normal mood and affect, behavior, judgment, and
thought content at numerous examinations and was not anxious at
other medical visits.

The ALJ reviewed the plaintiff's history and acknowledged
that the plaintiff presented with mild psychiatric symptoms at
examination on May 15, 2020, a "psychiatric evaluation/medical
clearance" for anxiety before bariatric surgery. R. 2268 18F/16.

The plaintiff does not challenge the ALJ's conclusions
concerning the absence of functional limitations with respect to
understanding, remembering, applying information, interacting
with others, concentrating, persisting or maintaining pace, and
adapting and managing oneself, nor that he demonstrated normal
mood and affect[20], behavior, judgment, and thought content at

---

[20] Finding the plaintiff's "mood was not anxious": 2/6/17 R. 1045 11F/17,
3/16/17 R. 1054 11F/26, 5/8/17 R. 1070 11F/42, 11/21/17 R. 1092 11F/64,
1/25/18 R. 1104 11F/76, 3/20/18 R. 1117 11F/89, 7/10/18 R. 1127 11F/99,
1/8/19 R. 1139 11F/111, 1/8/19 R. 1533 17F/94, 7/15/19 R. 1486 17F/47,
10/29/19 R. 1474 17F/35, 9/29/20 R. 2403 21F/6; "not nervous/anxious":
2/28/18 R. 939 10F/87, 6/5/18 R. 1567 17F/128, 11/8/2018 R. 856 10F/4,
11/8/18 R. 1540 17F/101, 5/23/19 R. 1499 17F/60, 11/29/18 R. 920 10F/68,
11/29/18 R. 1536 17F/97, 2/28/19 R. 1522 17F/83, 3/28/19 R. 981 10F/129,
3/28/19 R. 1514 17F/75, 8/22/19 R. 1005 10F/153, 8/22/19 R. 1480 17F/41,
11/5/19 R. 1468 17F/29, 2/4/20 R. 1456 17F/17, 3/9/20 R. 1447-48 17F/8;
"Anxiety: No", "Panic Attacks: No": 10/19/19 R. 2457 24F/2, 10/26/19 R. 2461
24F/6, 12/14/19 R. 2465 24F/10, 12/21/19 R. 2469 24F/14, 1/11/20 R. 2485
26F/2; "No anxiety": 10/4/15 R. 1240 13F/26, 4/7/20 R. 2614 29F/5;
"Psychiatric/Behavioral: Negative":  3/21/19 R. 1519 17F/80; and "Pysch: No
**depression**, **anxiety** or thought disorders":  6/12/18 R. 1564 17F/125 (emphasis
in original).  The record also supports findings of "normal mood and affect":
4/22/15 R. 1737 17F/298, 2/28/18 R. 941 10F/89, 5/10/18 R. 1578 17F/139,
5/11/18 R. 1593 17F/154, 5/21/18 R. 1573 17F/134,  6/5/18 R. 1569 17F/130,

numerous examinations and offers no evidence that the
plaintiff's anxiety and panic attacks had an impact on his
ability to do basic work activities on a regular and continuing
basis. The plaintiff did not mention mental impairments in his
disability reports (2/22/20 report at R. 299; 7/6/20 appeal at
R. 323, 328; 11/23/20 appeal at R. 335). At the hearing on April
14, 2021, the plaintiff testified that he was not seeing a
specialist, that the only treatment he was receiving for anxiety
was Hydroxyzine prescribed by his pain management doctor (see R.
54) and that the doctor "said that [] it was helping" and
"without panic attacks, that it was done." R. 55.

The court finds no error in the lack of a mental
functioning opinion. The record was "complete and detailed
enough to allow" the ALJ "to make a determination" about
disability. 20 C.F.R. §§ 404.1512(2), 416.912(2).  The ALJ
applied the correct legal principles and substantial evidence
supports the ALJ's findings as to this issue.

---

11/8/18 R. 858 10F/6, 11/8/18 R. 1542 17F/103,  11/29/18 R. 922 10F/70,
11/29/18 R. 1538 17F/99, 2/28/19 R. 1524 17F/85, 3/21/19 R. 1520 17F/81,
3/28/19 R. 983 10F/131, 3/28/19 R. 1516 17F/77, 5/23/19 R. 994 10F/142,
5/23/19 R. 1501 17F/62, 8/22/19 R. 1007 10F/155, 8/22/19 R. 1482 17F/43,
11/5/19 R. 1470 17F/31, 2/4/20 R. 1458 17F/19, 3/9/20 R. 1450 17F/11;
"appropriate mood and affect": 1/26/16 R. 1228 13F/14; "affect was normal and
the mood was normal": 4/7/20 R. 2615 29F/6; and "Mood and affect: Normal":
4/19/19 R. 1510 17F/71.

C.   **Pain**

The plaintiff contends that he is "unable to perform
standing and walking activities for more than a few minutes"
(Pl.'s Mem. at 12) and that "the ALJ should have considered all
factors of Mr. S[.]' pain, which have been described in the
record" (Pl.'s Mem. at 13).  In support, the plaintiff states

> Repeatedly, it has been noted that his pain escalates
> during certain activities like prolonged standing, bending,
> twisting, and lifting (Tr. 1375, 1377, 1378, 1390, 1391,
> 1396, 1399, 1402, 1405, 1408). He feels worse after
> prolonged walking (Tr. 1368) (Tr. 1399). On December 4,
> 2019, it was noted that Mr. S[.] can walk a maximum of 15
> minutes and then the pain worsens (Tr. 1371).
> . . .
>
> [H]e has pain in multiple areas of his body, including his
> knee, lower back, upper back, and arms. His pain fluctuates
> based on his activity and the duration of that activity,
> and as a diabetic, he is susceptible to blood sugar spike
> as a reaction to pain. As his doctor explained to him, even
> emotional stress can have the effect of increasing blood
> sugar (Tr. 1548).

Pl.'s Mem. at 12-13.

The defendant contends that the plaintiff ignores "the
ALJ's detailed discussion of the longitudinal treatment record .
. ., favors his own assessment of the evidence," cites "his
subjective reports of pain with activity and a December 2019
visit at which he told Dr. Knoploch that his left knee pain
worsened after walking for 15 minutes" but "fails to note that
his left knee injury continued to improve with treatment and
that he subsequently reported being 'able to walk longer

distances,' including 20 minutes and then 30 minutes daily".

Def.'s Mem. at 15.

The applicable regulations provide:

In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and **we will evaluate your statements in relation to the objective medical evidence and other evidence,** in reaching a conclusion as to whether you are disabled. **We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence,** including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. **Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.**

20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)(emphasis added).

Paragraphs (c)(1) through (c)(3) state:

(1)   General. . . . . In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you. . . .

(2)   Consideration of objective medical evidence. **Objective medical evidence** is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, **such as** evidence of reduced joint motion, muscle spasm, **sensory deficit or motor disruption.** Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and

persistence of your symptoms and the effect those
symptoms, such as pain, may have on your ability to
work. . . .

(3)   Consideration of other evidence. Because symptoms
      sometimes suggest a greater severity of impairment
      than can be shown by objective medical evidence alone,
      we will carefully consider any other information you
      may submit about your symptoms. . . . Because
      symptoms, such as pain, are subjective and difficult
      to quantify, any symptom-related functional
      limitations and restrictions that your medical sources
      or nonmedical sources report, which can reasonably be
      accepted as consistent with the objective medical
      evidence and other evidence, will be taken into
      account as explained in paragraph (c)(4) of this
      section in reaching a conclusion as to whether you are
      disabled. . . . **Factors relevant to your symptoms**,
      such as pain, **which** we will consider *include*:

      (i)     Your daily activities;
      (ii)    The location, duration, frequency, and
              intensity of your pain or other symptoms;
      (iii)   Precipitating and aggravating factors;
      (iv)    The type, dosage, effectiveness, and side
              effects of any medication you take or have
              taken to alleviate your pain or other symptoms;
      (v)     Treatment, other than medication, you receive
              or have received for relief of your pain or
              other symptoms;
      (vi)    Any measures you use or have used to relieve
              your pain or other symptoms (e.g., lying flat
              on your back, standing for 15 to 20 minutes
              every hour, sleeping on a board, etc.); and
      (vii)   Other factors concerning your functional
              limitations and restrictions due to pain or
              other symptoms.

20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3)(emphasis

added).

      In evaluating an individual's symptoms, . . . The
determination or decision must contain specific reasons for
the weight given to the individual's symptoms, be

consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

Social Security Ruling 16-3p.

The Decision states:

The **claimant testified that he was unable to work because of his persistent back pain.** He indicated that he experienced **leg swelling and pain with prolonged standing.** The claimant stated that **he could stand for fifteen** minutes and **walk for ten to fifteen** minutes before experiencing radiating pain and swelling. He stated that he could **sit for 45 minutes.**

. . . .

The claimant's purported lifting, standing and walking limitations are not corroborated by his examination presentation. At the claimant's Medi-Weight Loss clinic visits, he reported **no limits in standing, running and walking** (Exs. 24F/2, 6, 10, 14; 26F/2, 6, 14, 27, 38; 28F/2). The claimant was **able to undergo cardio and resistance training for twenty to thirty minute intervals, three to four times per week** (Ex. 26F/5, 77). The claimant also **did not use an assistive device** at medical visits (Exs. 12F/22; 15F/5-6, 24, 28, 42; 19F; 20F; 22F/3).
. . . .

While the claimant **reported disabling left knee issues,** he reported **some improved left knee symptoms with injections and physical therapy** (Exs. 12F/3, 5, 11, 14, 18, 24-45; 15F/3; 20F/6, 17; 22F/2-3, 5). Additionally, the claimant's **normal lower extremity strength** at examinations and **ability to walk without an assistive device are inconsistent** with someone with knee issues as severe as alleged (Exs. 12F/2, 9, 22; 14F/16; 15F/5-6, 24, 28, 42; 19F; 20F; 22F/3). The undersigned **took into consideration the claimant's decreased and painful ranges of spinal, left knee and left shoulder motion, his history of spinal and left knee injections, chiropractic treatments, physical therapy, use of a TENS unit and prescription medication regimen.** Yet, his **improved musculoskeletal issues with treatment** and the overall physical examination findings of record – **all suggest that limiting him to a range of light exertion is appropriate** (Exs. 13E; 8F; 12F; 13F/3; 15F/3-6, 24, 28, 42;

```
19F; 20F/6, 17, 19, 26, 29; 21F/2; 22F/2-3, 5).
Additionally, this evidence also demonstrates that
claimant's allegations appear somewhat more excessive than
the record can support.
```
R. 21, 23-24 (emphasis added).

Here, the ALJ clearly articulated specific and reviewable reasons for finding that the plaintiff's statements as to symptoms were inconsistent with medical and other evidence: No standing, running, or walking limitations were noted at clinic visits (see footnote 4); exercise recommendations including cardio and resistance training for twenty-to-thirty minute intervals three to four times per week (see footnote 5; also ability to walk at footnote 9); musculoskeletal and left knee improvement with treatment (see footnote 6; also normal lower extremity strength at footnote 7); and lack of assistive devices (see footnote 3).

The RFC reflects that the ALJ considered the plaintiff's decreased and painful ranges of spinal, left knee and left shoulder motion, his testimony regarding persistent back pain, pain with prolonged standing and walking, and sitting and lifting limitations. Also, the plaintiff does not dispute that the ALJ considered the course of treatment (medication management, TENS unit treatments, injections, physical therapy and exercise) and his ability to perform activities of daily living such as to bathe and dress himself, drive a motor vehicle without restrictions, fish three to four days per week during

fishing season, and take his children to the park two to three days per week. Additionally, the plaintiff states that he performed household chores including vacuuming, ironing, and making his bed. R. 312 4E/3.

Where the ALJ's decision is supported by substantial evidence, it must be sustained, even where there may also be substantial evidence to support a contrary position.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982). The court finds no error in the ALJ's consideration of the plaintiff's symptoms and substantial evidence supports the ALJ's findings as to this issue.

**D.   Hand and Arm Limitations**

The plaintiff contends that "the ALJ failed to properly evaluate, and incorporate in his RFC description", the plaintiff's "hand and arm limitations" (Pl.'s Mem. at 13-14), and that "[w]hen, as here, the ALJ failed to either provide a narrative or failed to provide an accurate narrative, remand is required."  Pl.'s Mem. at 14-15. The plaintiff states

> Mr. S[.] had shoulder surgery in 1998 related to a work injury, from which he recovered 100% at that time, and had no symptoms until a 2017 motor vehicle accident caused a recurrence. He also has a history of cervical medial branch blocks in 2016 with partial relief of left upper extremity dysesthesias, until the September 2017 motor vehicle accident (Tr. 1381, 1384, 1387, 1390, 1391, 1396, 1400, 1402, 1405, 1408, 1417). He has neck pain, and left hand parastheasias (Tr. 1368, 1371). Since the accident, his pain has interfered with activities like lifting. The pain that

remained after treatment was described as pinching in the
left shoulder and worse with certain movements (Tr.
1408[21]). An MRI of his left shoulder performed in December
2017, showed mild tendinosis in three of four tendons and
probable small label tear and moderate AC joint
osteoarthritis. He was assessed with likely a rotator cuff
syndrome (Tr. 1411). At that time, he underwent a left
subacromial bursa injection (Tr. 1413). After maximum
improvement of the shoulder, he remained with residual
limitations in prolonged abduction and flexion (Tr. 1368).
Unrelated to the accidents, Mr. S[.] suffers from
osteoarthritis affecting multiple joints (Tr. 1451).

Pl.'s Mem. at 14.

The defendant argues that

the ALJ explicitly considered that evidence and concluded
that Plaintiff's "purported lifting and left shoulder
limitations are not fully supported by the other evidence
of record" (Tr. 23).

Def.'s Mem. at 17.

The Decision states:

The claimant's purported lifting and left shoulder
limitations are **not fully supported** by the other evidence
of record. Other than the claimant's subjective allegations
of hand paresthesias and weakness, there is **no objective
evidence of upper extremity weakness or decreased
sensations** (Exs. 14F/16; 15F/2, 5-6, 24, 28, 42; 19F;
20F/6, 13, 26, 29). While the claimant demonstrated
decreased and painful ranges of left shoulder motion, he
**experienced some improvement in his left shoulder issues
with treatment** (Exs. 15F/5-6; 19F; 20F; 22F/2-3).
Furthermore, his ability to **bathe and dress himself, drive
a motor vehicle without restrictions, and fish as a hobby
are inconsistent** with someone with the degree of upper
extremity limitations as purported (Hearing Testimony).

R. 23 (emphasis added).

---

[21] See n.10.

The plaintiff does not dispute the ALJ's finding that the plaintiff can lift up to 20 pounds and lift and carry up to 10 pounds, and light work requires "some pushing and pulling of arm and leg controls". 20 C.F.R. §§ 404.1567(b), 416.967(b).

Here, the ALJ clearly articulated specific and reviewable reasons for not including additional lifting and left shoulder limitations. Such limitations are not fully supported by the evidence: No objective evidence supports upper extremity weakness or decreased sensation (nor does plaintiff provide such evidence; see also footnotes 3, 7), there was improvement of his left shoulder with treatment (see footnotes 6, 10), and he retained the ability to bathe and dress himself, drive a motor vehicle without restrictions, and fish as a hobby. The plaintiff does not contest these facts as to activities of daily living.

Where the ALJ's decision is supported by substantial evidence, it must be sustained, even where there may also be substantial evidence to support a contrary position. See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982). The court finds no error in the ALJ's consideration of the plaintiff's hand and arm limitations and substantial evidence supports the ALJ's findings as to this issue.

III. **Conclusion**

For the reasons set forth above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the

Alternative Motion for Remand for a Hearing (ECF No. 14) is hereby DENIED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 17) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

The Clerk's Office is instructed that, if any party subsequently appeals to this court the decision made after this remand, that Social Security appeal shall be assigned to the undersigned (as the District Judge who issued the ruling that remanded the case).

It is so ordered.

Dated this 7th day of April 2023, at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge
